**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

| Chief Justice: | Justices: |
|---|---|
| Clifford W. Taylor | Michael F. Cavanagh |
| | Elizabeth A. Weaver |
| | Marilyn Kelly |
| | Maura D. Corrigan |
| | Robert P. Young, Jr. |
| | Stephen J. Markman |

FILED JUNE 13, 2006

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                    No. 128161

RAYMOND A. MCCULLER,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MEMORANDUM OPINION.

Defendant was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84, following a jury trial. The properly scored recommended minimum sentence guidelines range for defendant's offense provided for a term of five to 28 months' imprisonment, thus placing defendant in a so-called "straddle cell."[1] The trial court sentenced defendant within the

---

[1] When a defendant is placed in a "straddle cell," the sentencing court has the option of imposing an intermediate sanction or a prison term. MCL 769.34(4)(c) provides:

> If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended

(continued…)

guidelines range to two to 15 years of imprisonment. On appeal, defendant argues that because his prior record variable (PRV) score alone placed him in a recommended minimum guidelines range of zero to 11 months, he is entitled to an intermediate sanction.[2] Defendant contends that the trial court violated *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), by engaging in judicial fact-finding to score the offense variables (OVs), thereby allegedly increasing his maximum sentence from an intermediate sanction to a prison term. We reject defendant's and the dissent's contention and affirm defendant's sentence.

In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that under the Sixth and Fourteenth amendments of the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

---

(…continued)

> minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> > (*i*) To imprisonment with a minimum term within that range.
>
> > (*ii*) To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

[2] When the upper limit of the guidelines range is 18 months or less, the sentencing court must impose an intermediate sanction. MCL 769.34(4)(a). An "intermediate sanction" can mean a number of things, but excludes a prison

(continued…)

reasonable doubt." In *Blakely, supra* at 303, the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis deleted.) In regard to indeterminate sentencing schemes such as Michigan's, the *Blakely* Court reaffirmed that a sentencing court may engage in judicial fact-finding in order to impose a minimum term within the statutory range. See *People v Drohan*, 475 Mich ___; ___ NW2d ___ (2006) (Docket No. 127489, decided June 13, 2006). The *Blakely* Court explained:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [*Blakely, supra* at 309 (emphasis in original).]

Thus, a sentencing court in an indeterminate sentencing scheme does not violate *Blakely* by engaging in fact-finding to determine the minimum term of a defendant's indeterminate sentence unless the fact-finding increases the statutory maximum sentence to which the defendant had a legal right.

In Michigan, when the high end of the recommended minimum guidelines range is 18 months or less, MCL 769.34(4)(a) requires a sentencing court, absent

---

(…continued)
sentence. *People v Stauffer*, 465 Mich 633, 635; 640 NW2d 869 (2002); MCL 769.31(b).

articulation of substantial and compelling reasons, to impose an intermediate

sanction, which may include a jail term of no more than 12 months:

> If the upper limit of the recommended minimum sentence range for a defendant *determined under the sentencing guidelines* set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [Emphasis added.]

MCL 777.21 explicitly requires the court to consider the OVs, the PRVs, and the

offense class to determine a defendant's recommended minimum guidelines

range.[3] Under our statutory scheme, a defendant has no legal right to have the

---

[3] MCL 777.21(1) provides:

> For an offense enumerated in part 2 of this chapter, determine the recommended minimum sentence range as follows:

> (a) Find the offense category for the offense from part 2 of this chapter. From section 22 of this chapter, determine the offense variables to be scored for that offense category and score only those offense variables for the offender as provided in part 4 of this chapter. Total those points to determine the offender's offense variable level.

> (b) Score all prior record variables for the offender as provided in part 5 of this chapter. Total those points to determine the offender's prior record variable level.

> (c) Find the offense class for the offense from part 2 of this chapter. Using the sentencing grid for that offense class in part 6 of this chapter, determine the recommended minimum sentence range from the intersection of the offender's offense variable level and prior record variable level. The recommended minimum sentence within a sentencing grid is shown as a range of months or life.

4

minimum sentence calculated using only a *fraction* of the statutorily enumerated factors. Thus, under MCL 769.34(4)(a), a defendant is not legally *entitled* to an intermediate sanction until *after* the OVs have been scored and those OVs, in conjunction with the PRVs and the offense class, indicate that the upper limit of the defendant's guidelines range is 18 months or less. In other words, a defendant's legal right to an intermediate sanction arises from properly scored guidelines, including the scoring of the OVs. A sentencing court does not violate *Blakely* and its progeny by engaging in judicial fact-finding to score the OVs to calculate the minimum recommended sentencing guidelines range, even when the defendant's PRV score alone would have placed the defendant in an intermediate sanction cell.[4]

In this case, properly scored guidelines placed defendant in a recommended minimum sentence range of five to 28 months in prison. This placed defendant in a "straddle cell," in which the trial court was permitted to choose between imposing an intermediate sanction or a prison term. MCL 769.34(4)(c). Thus, defendant faced a statutory maximum sentence of 15 years in prison for his

---

[4] Contrary to the dissent's contention, our holding is consistent with *Ring v Arizona*, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002). In *Ring* the Court held that Arizona's sentencing scheme violated the defendant's Sixth Amendment rights where the sentencing court increased the defendant's statutory maximum sentence of life imprisonment to a death sentence on the basis of a judicial finding of aggravating factors. This case does not involve an increase of defendant's statutory maximum sentence on the basis of judicial findings. Instead, the trial court merely scored defendant's OVs before imposing a sentence within the statutory range.

conviction of assault with intent to do great bodily harm less than murder as a second-offense habitual offender, MCL 750.84; MCL 769.10. Because the properly scored guidelines range did not entitle defendant to an intermediate sanction, the trial court did not violate *Blakely* by scoring the OVs before imposing a prison sentence within the guidelines. Accordingly, we affirm defendant's sentence.

In all other respects, defendant's application for leave to appeal is denied, because we are not persuaded that this Court should review the remaining questions presented.

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

6

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V                                       No. 128161

RAYMOND A. MCCULLER,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

This case provides the Court an opportunity to fully and carefully explore the effects on Michigan's sentencing guidelines[1] of the United States Supreme Court decision in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004). It presents an important *Blakely* problem: whether judicial fact-finding that increases a person's sentence by moving it from an intermediate sanction cell to a straddle cell violates the person's Sixth Amendment[2] right to trial

_____

[1] MCL 777.1 *et seq.*

[2] The Sixth Amendment of the United States Constitution provides:

    In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. [US Const, Am VI.]

by jury. I have concluded that it does. Hence, I would rule that Michigan's sentencing guidelines are unconstitutional as applied. Because a *Blakely* violation occurred here, I would remand the case to the trial court so that defendant could be resentenced.

PROCEDURAL FACTS

A jury found defendant Raymond McCuller guilty of assault with intent to do great bodily harm less than murder. MCL 750.84. In arriving at its sentence, the trial court followed these steps: Because defendant had previously been convicted of a misdemeanor, the judge scored two points for the prior record variables (PRVs). He also scored 36 points for the offense variables (OVs). He did this by making certain findings of fact. He found that the victim had been touched by a weapon, other than a gun or knife, and scored OV 1 at ten points. MCL 777.31. He found that defendant had possessed a potentially lethal weapon and scored OV 2 at one point. MCL 777.32. He found that the victim had suffered a life threatening or permanent incapacitating injury, and scored OV 3 at 25 points. MCL 777.33.

The sentencing guidelines statutes make assault with intent to do great bodily harm less than murder a class D offense. MCL 777.16d. In the guidelines class D sentencing grid, a PRV level of two points and an OV level of 36 points placed defendant in the B-IV cell. This cell provides a minimum sentence range

2

of five to 23 months.  MCL 777.65.[3]  Because defendant had a prior conviction, the judge increased the top number by 25 percent to 28 months.  MCL 777.21(3)(a).[4]  The range for his minimum sentence became five to 28 months.  Accordingly, the judge sentenced defendant within this range to a minimum of two years' imprisonment.

After the sentencing and before defendant filed his claim of appeal, the United States Supreme Court released its decision in *Blakely.*  Defendant could not have raised a *Blakely* issue at his sentencing.  But he did raise the issue in his

---

[3] This cell is what is often referred to as a "straddle cell."  See *People v Stauffer*, 465 Mich 633, 636 n 8; 640 NW2d 869 (2002).  Straddle cells are addressed at MCL 769.34(4)(c), which provides:

> If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> (*i*)  To imprisonment with a minimum term within that range.
>
> (*ii*)  To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

[4] MCL 777.21(3) provides, in relevant part:

> If the offender is being sentenced under section 10, 11, or 12 of chapter IX, determine the offense category, offense class, offense variable level, and prior record variable level based on the underlying offense.  To determine the recommended minimum sentence range, increase the upper limit of the recommended minimum sentence range determined under part 6 for the underlying offense as follows:
>
> (a) If the offender is being sentenced for a second felony, 25%.

3

appeal to the Court of Appeals. Unfortunately, that Court did not directly address the issue. Instead, it relied on our dicta discussion of the subject contained in *People v Claypool*, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004). As a result, it found that defendant was not entitled to resentencing. *People v McCuller*, unpublished opinion per curiam of the Court of Appeals, issued January 11, 2005 (Docket No. 250000).

Originally, this Court held the case in abeyance for the matter of *People v Drohan*, 472 Mich 881 (2005). Later, we scheduled oral argument for the purpose of determining whether to grant the application or take other peremptory action pursuant to MCR 7.302(G)(1). We specifically ordered the parties to address the effect of *Blakely* on defendant's sentence. Unfortunately, in its opinion, the majority fails to recognize the effects of *Blakely* on defendant's sentence.

MICHIGAN'S SENTENCING SCHEME

MCL 769.8 lays out the basics of Michigan's statutory sentencing scheme:

(1) When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.

(2) Before or at the time of imposing sentence, the judge shall ascertain by examining the defendant under oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the defendant's criminal character or conduct, which facts and other facts that appear to be pertinent in the case the judge shall cause to be entered upon the minutes of the court.

4

Therefore, generally, a court's initial attention when sentencing must be on determining the minimum sentence. That sentence must be within the range set by the sentencing guidelines unless substantial and compelling reasons to depart from the range are shown. MCL 769.34(2) and (3). Typically in Michigan, the maximum sentence is established by statute. For instance, MCL 750.84 provides that the maximum sentence for assault with intent to do great bodily harm less than murder is ten years or a fine of $5,000. Unless a defendant has habitual-offender status, the sentencing court cannot exceed the maximum sentence provided by statute.[5]

There are exceptions to the general rule that the court's focus in sentencing is only on the minimum sentence. With respect to certain offenses, the Legislature has specified a determinate sentence.[6] They require a specific sentence, not a sentence that falls within a range. For instance, the offense of carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm) has a mandatory determinate sentence of two years. A second conviction for felony-firearm requires a determinate five-year sentence. MCL 750.227b(1).

---

[5] With respect to habitual offenders, MCL 769.10, MCL 769.11, and MCL 769.12 allow the maximum sentence to be increased. The new maximum set forth in these statutes is the absolute maximum to which the sentencing judge can sentence a defendant. In this case, because defendant was a second-offense habitual offender, the maximum possible sentence was 15 years. MCL 769.10(1)(a). Defendant received this maximum sentence.

[6] A "determinate sentence" is "[a] sentence for a fixed length of time rather than for an unspecified duration." Black's Law Dictionary (7th ed), p 1367.

5

But, for purposes of this case, the most important exception to the general rule that trial judges calculate a defendant's minimum sentence involves intermediate sanction cells.

INTERMEDIATE SANCTION CELLS

If the trial court had not entered a score for OVs 1, 2, and 3, defendant's OV level would have dropped to zero. This would have moved him to the B-I cell. The B-I cell provides a sentencing range of zero to 11 months' imprisonment for a second-offense habitual offender. MCL 777.21(3)(a) and 777.65. Because its upper limit is under 18 months, the B-I cell is referred to as an "intermediate sanction cell."

MCL 769.34(4)(a) provides:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

MCL 769.31(b) further defines "intermediate sanction":

> "Intermediate sanction" means probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed. Intermediate sanction includes, but is not limited to, 1 or more of the following:
>
> (*i*) Inpatient or outpatient drug treatment or participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1082 .

6

(*ii*)  Probation with any probation conditions required or authorized by law.

(*iii*)  Residential probation.

(*iv*)  Probation with jail.

(*v*)  Probation with special alternative incarceration.

(*vi*)  Mental health treatment.

(*vii*)  Mental health or substance abuse counseling.

(*viii*)  Jail.

(*ix*)  Jail with work or school release.

(*x*)  Jail, with or without authorization for day parole under 1962 PA 60, MCL 801.251 to 801.258.

(*xi*)  Participation in a community corrections program.

(*xii*)  Community service.

(*xiii*)  Payment of a fine.

(*xiv*)  House arrest.

(*xv*)  Electronic monitoring.

When one reads these statutes together, it becomes apparent that intermediate sanction cells have a highly unusual role in Michigan's sentencing guidelines scheme.  Once a defendant's minimum sentencing range falls within those cells, the guidelines no longer are concerned with the person's minimum sentence.  Instead, under MCL 769.34(4)(a), the guidelines set the maximum sentence to which the defendant may be sentenced.  That maximum is either the upper limit of the range of the recommended minimum sentence or 12 months in jail, whichever is shorter.  The guidelines statutes do not permit a court to sentence

7

to prison a defendant fitting within the intermediate sanction cells. The court is required to impose a maximum term of 12 months or less, unless it can state substantial and compelling reasons for a longer sentence. MCL 769.34(4)(a).

In this case, the defendant's maximum sentence would have been 11 months in jail if the trial judge had not affixed a score to OVs 1, 2, and 3. By scoring the OVs after making judicial findings of fact, the judge moved defendant out of the intermediate sanction cell into a straddle cell. By that process, the judge sentenced defendant to a higher maximum sentence than he would have been able to on the basis of the jury verdict and defendant's criminal history alone. And the judge scored the OVs after making his own findings of fact, findings not made by the jury. It is under this setting that I address the applicability of the United States Supreme Court's decision in *Blakely*.[7]

THE HIGH COURT'S PRECEDENT REGARDING THE "STATUTORY MAXIMUM"

The United States Supreme Court grappled over a long period with the judicial modification of sentences using facts found by a judge after a jury's verdict. These facts are known as "sentencing factors." In *McMillan v*

---

[7] This Court considered the application of *Blakely* to standard sentencing guideline cases in *People v Drohan*, 475 Mich ___; ___ NW2d ___ (Docket No. 127489, decided June 13, 2006). My statement here should be read in tandem with my concurring/dissenting opinion in *Drohan* for a fuller discussion of the applicability of *Blakely* to Michigan's sentencing guidelines statutes.

*Pennsylvania*,[8] the Court addressed the constitutionality of Pennsylvania's mandatory minimum sentencing act, 42 Pa Cons Stat 9712 (1982). That act provided for a mandatory minimum sentence for certain felonies if the sentencing judge found, by a preponderance of the evidence, that the defendant "'visibly possessed a firearm' during the commission of the offense." *McMillan v Pennsylvania*, 477 US 79, 81; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

The Court found that the visible-possession requirement was a mere sentencing factor that did not change the prosecution's burden of proving guilt beyond a reasonable doubt. *Id*. at 86-88. And it made another important point: there are constitutional limitations on the degree to which a state may whittle away the factual support needed to prove a criminal offense beyond a reasonable doubt. It also paid special attention to the fact that 42 Pa Cons Stat 9712 did not increase the maximum penalty faced by the defendant:

> Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. [*McMillan, supra* at 87-88.]

The Supreme Court returned to the discussion of sentencing factors in *Jones v United States*, 526 US 227; 119 S Ct 1215; 143 L Ed 2d 311 (1999). In that case, the Court addressed whether the federal carjacking statute[9] constituted

---

[8] 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

[9] 18 USC 2119. At the time, the statute provided:

(continued…)

9

three separate crimes or one crime with sentencing factors that increased the maximum penalty. *Id*. at 229. The Court concluded that a fair reading of the statute required it to find three separate offenses. But it went on to discuss alternative reasons under constitutional law for requiring that all the "elements" be proven to a jury beyond a reasonable doubt. The Court's focus quickly centered on *McMillan's* discussion of an increase in the maximum penalty:

> The terms of the carjacking statute illustrate very well what is at stake. If serious bodily injury were merely a sentencing factor under § 2119(2) (increasing the authorized penalty by two thirds, to 25 years), then death would presumably be nothing more than a sentencing factor under subsection (3) (increasing the penalty range to life). If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment. [*Id*. at 243-244.]

---

(…continued)

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

10

The Supreme Court found the diminution of the jury's role of great concern. It indicated that removal from the jury of control over the facts necessary for determining a statutory sentencing range would raise a genuine Sixth Amendment issue. *Id*. at 248. The Court stated that any doubt on this issue of statutory construction must be resolved in favor of avoiding such Sixth Amendment questions. *Id*. at 251.

The next step in the Supreme Court's discussion of sentencing factors came in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). *Apprendi* centered on a New Jersey hate-crime law. The statute allowed for an increase in the defendant's maximum sentence from ten to 20 years if the trial court found that the defendant "'acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" *Id*. at 468-469, quoting NJ Stat Ann 2C:44-3(e). The sentencing judge could make the finding based on a preponderance of the evidence. *Apprendi*, 530 US 468. In its analysis, the Supreme Court specifically built on its holding in *Jones*. It concluded that the Fourteenth Amendment of the United States Constitution commanded the same answer for state statutes. *Id*. at 476.

The *Apprendi* Court found that a legislature could not change the elements of a crime simply by labeling some of them "sentencing factors." It found that such attempts run afoul of due process and violate a defendant's Sixth Amendment protections. Instead, the Court stated, a sentencing court could exercise its judicial

11

discretion on sentencing factors only as long as the sentence imposed fell within the appropriate statutory limits. *Id*. at 481-482. The Court expressed concern that a defendant not be deprived of his or her liberty or otherwise stigmatized by a conviction and sentence. To that end, procedural practices must adhere to the basic principles undergirding the requirement that the prosecution prove beyond a reasonable doubt all facts necessary to constitute the statutory offense. *Id*. at 483-484. The Court reasoned that increasing punishment beyond the statutory maximum violated those principles:

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached. [*Id*. at 484.]

The Supreme Court went on to make a concise reiteration of its holding. In doing so, it used the phrase "statutory maximum":

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." [*Id*. at 490, quoting *Jones*, 526 US 252-253 (Stevens, J., concurring).]

12

The Supreme Court continued its discussion of the "statutory maximum" in *Ring v Arizona*, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002). That case dealt with the Sixth Amendment implications of Arizona's first-degree murder statute. The statute stated that first-degree murder was punishable by death or life in prison. It then referred to another statute that directed the trial judge to conduct a separate sentencing hearing. The purpose of the hearing was to determine the existence of specific circumstances (sentencing factors) in order to decide whether a death sentence was appropriate. *Id*. at 592-593. The Supreme Court, relying on its previous decisions in *Jones* and *Apprendi*, found that Arizona's system violated the defendant's Sixth Amendment rights.

The Court reiterated:

> The dispositive question, we said, "is one not of form, but of effect." If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt. A defendant may not be "expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." [*Id*. at 602, quoting *Apprendi*, 530 US 482-483, 494 (citations omitted; emphasis in *Apprendi*).]

Notwithstanding that the statute allowed for either life in prison or death, the Supreme Court found that the "statutory maximum" was life imprisonment. This is because the death sentence could be imposed only after additional factual findings by a judge. The Supreme Court found nothing to distinguish this case from *Apprendi*. *Ring,* 536 US 604-606. It reached this conclusion because Arizona's enumerated aggravating factors were the functional equivalent of an

13

element of a greater offense. Therefore, the Sixth Amendment required that a jury find these factors beyond a reasonable doubt. *Id*. at 609.

It was in *Blakely* that the Supreme Court fully explained the meaning of the phrase "statutory maximum." In that case, the defendant had pleaded guilty in the state of Washington of second-degree kidnapping involving domestic violence and the use of a firearm. The standard sentencing range for the offense was 49 to 53 months in prison. *Blakely*, 542 US 298-299. But, under Washington's sentencing guidelines, a court could impose a sentence above the standard range if it found substantial and compelling reasons to justify an "exceptional sentence." *Id*. at 299.

Aside from the elements of the crime, the defendant in *Blakely* admitted to no other relevant facts. *Id*. However, after hearing the complainant's version of the kidnapping, the judge imposed an exceptional sentence of 90 months.[10] He based this departure on his finding that there had been deliberate cruelty, a statutorily enumerated ground for departure in domestic violence cases. *Id*. at 300. Washington argued that its system did not present a Sixth Amendment problem because the highest possible sentence was a maximum of ten years' imprisonment. Therefore, in no instance could an exceptional sentence exceed ten years. *Id*. at 303. The Supreme Court rejected this argument.

---

[10] Washington's sentencing scheme provided for determinate sentences. *Blakely*, 542 US 308.

14

Instead, it defined the "statutory maximum" as the maximum sentence that can be imposed without judicial fact-finding:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority. [*Id*. at 303-304 (emphasis in original; citations omitted).]

Therefore, for Sixth Amendment purposes, the maximum sentence was not ten years. Instead, it was 53 months, the maximum sentence that could have been imposed solely on the basis of facts defendant admitted when pleading guilty. *Id*. at 304. The Supreme Court concluded that this determination alone properly effectuated the people's control of the judiciary that the Founding Fathers intended:

> Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. One can certainly argue that both these values would be better served by leaving justice entirely in the hands of professionals; many nations of the world, particularly those following civil-law traditions, take just that course. There is not one shred of doubt, however, about the Framers' paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by strict division of authority between judge and jury. As *Apprendi* held, every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment. [*Id*. at 313 (emphasis in original).]

The final phase in the Supreme Court's discussion of judicial modification of statutory maximum sentences through "sentencing factors" came in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). In that case, the Court addressed the applicability of *Blakely* to the federal sentencing guidelines. Booker[11] was charged with possession with intent to distribute at least 50 grams of cocaine base. The statute for this crime provided a maximum possible sentence of life in prison. But on the basis of Booker's criminal history and the quantity of cocaine base that the jury found was involved, the guidelines required a maximum sentence of 262 months' imprisonment. Instead of imposing that sentence on Booker, the trial court held a hearing during which it made additional findings of fact. It found that Booker had possessed an additional 566 grams of cocaine base and that he had obstructed justice. Accordingly, using a preponderance of the evidence test, the court increased the maximum sentence to 30 years in prison. *Id*. at 227.

After a discussion of *Jones*, *Apprendi*, *Ring*, and *Blakely*, the Supreme Court found the federal guidelines statutes indistinguishable from the Washington guidelines statutes at issue in *Blakely*.

> Booker's actual sentence, however, was 360 months, almost 10 years longer than the Guidelines range supported by the jury verdict alone. To reach this sentence, the judge found facts beyond those found by the jury: namely, that Booker possessed 566 grams

---

[11] *Booker* involved consolidated cases that included another defendant, Fanfan. For the sake of avoiding repetition, I will discuss defendant Booker only.

of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just as in *Blakely*, "the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." There is no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in these cases. [*Id.* at 235, quoting *Blakely*, 542 US 305 (citation omitted).]

It again found irrelevant the fact that there existed an absolute maximum sentence set by statute. The maximum sentence could not be applied in every case. Instead, in cases like Booker's, the jury's verdict supports nothing other than a lower maximum sentence. *Booker*, 543 US 234-235. In conclusion, the Supreme Court reiterated its holding from *Apprendi*:

> Accordingly, we reaffirm our holding in *Apprendi:* Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. [*Id.* at 244.]

On this basis, the Supreme Court invalidated the statutory provisions that make the federal sentencing guidelines mandatory. *Id.* at 226-227.

### *BLAKELY* AND MICHIGAN'S GENERAL SENTENCING SCHEME

As noted before, Michigan's sentencing guidelines generally establish the minimum sentence. Usually, judicial fact-finding does not alter a defendant's maximum sentence. Instead, in the typical case, the maximum sentence for *Blakely* purposes is the sentence set by the statute. The defendant's criminal history, admitted facts, and the jury's verdict alone allow the sentencing court to

sentence the defendant to the maximum sentence allowed by law, without recourse to judicial fact-finding. And the defendant's Sixth Amendment rights are not implicated because all the facts necessary to support the maximum sentence have been proven to a jury beyond a reasonable doubt.

Such situations do not threaten the basic principles undergirding our jury-driven legal system. This is because the defendant knows what maximum sentence he or she is facing regardless of judicial fact-finding. *Apprendi* noted that judicial fact-finding is acceptable when it does not increase the maximum penalty for a crime or create a separate offense calling for a separate penalty. "'[Judicial fact-finding] operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding[s] . . . .'" *Apprendi*, 530 US 486, quoting *McMillan*, 447 US 88.

The typical application of the Michigan sentencing guidelines more readily relates to *McMillan*. Scoring the OVs merely shifts a defendant's sentence within the maximum range. It does not move the defendant from one maximum sentence to a higher one. A defendant whose criminal history and jury verdict do not place him or her in an intermediate sanction cell always knows what the potential maximum sentence will be: it is the maximum penalty prescribed by law. Because there is no notice problem in the application of the sentencing guidelines in cases not involving intermediate sanction cells, there is no Sixth Amendment issue either. All of this changes, however, when an intermediate sanction cell is involved.

18

When a defendant is entitled to a sentence within an intermediate sanction cell, MCL 769.34(4)(a) sets the maximum sentence. That sentence is either the upper limit of the recommended minimum sentence range or 12 months in jail, whichever is shorter. Under the guidelines, the court *must* impose this maximum sentence, unless it can state substantial and compelling reasons to depart upward. Therefore, the process is no longer concerned with the defendant's minimum sentence. This alteration in focus changes the "statutory maximum" discussed in *Apprendi* and *Blakely*.

The new maximum sentence set under MCL 769.34(4)(a) is the "statutory maximum." This is true because it is the highest sentence to which the court can sentence a defendant solely on the basis of the defendant's criminal record, admissions, and the jury's verdict. *Booker*, 543 US 244; *Blakely*, 542 US 301; *Apprendi*, 530 US 490; *Jones*, 526 US 251-252. And, if the court makes findings of fact moving the sentence to a higher statutory maximum, the defendant faces either (1) a different criminal charge or (2) the increased stigma of an extended sentence.

This is specifically what the Supreme Court sought to avoid. *Apprendi*, 530 US 484. Any judicial fact-finding that shifts the defendant's sentence above the statutory maximum is unconstitutional and violates *Jones* and its progeny. By scoring the OVs or stating substantial and compelling reasons to depart from the sentencing guidelines range, a court engages in such judicial fact-finding.

The question then becomes: Who is entitled to an intermediate sanction cell? Again, the central holding of the pertinent cases is that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. [*Booker*, 543 US 244.]

In other words, a defendant is entitled to a sentence based solely on (1) the defendant's prior convictions and (2) any facts he or she admitted or any facts that were specifically found by the jury. *Id.*

To determine an appropriate sentence in Michigan, the sentencing court should score only the PRVs. This is true because these factors are based on the defendant's prior convictions and relations to the criminal justice system. To determine whether a defendant's sentence falls within an intermediate sanction cell, the sentencing court should not score the OVs. This is because they are based on factual determinations that are made by the trial court by a preponderance of the evidence. Such judicial fact-finding was explicitly rejected in the *Blakely* line of cases. *Id.* at 234-235. The only time the sentencing court should score an OV is when the underlying fact was admitted by the defendant or found by the jury beyond a reasonable doubt. But this occurs only in rare cases.

Therefore, it is safe to conclude that a Michigan defendant is entitled to an intermediate sanction cell sentence when his or her PRV level alone supports such a sentence. On the other hand, a defendant whose PRV level is too high to place him or her in an intermediate sanction cell is not entitled to a sentence within an

20

intermediate sanction cell. The latter defendant falls under the general sentencing scheme and is subject to the maximum sentence set by law. In that case, the trial court is free to make the judicial findings of fact necessary to score the OVs.

The instant case is demonstrative of the distinction. Defendant did not admit any fact necessary to score OVs 1, 2, and 3. And the jury made no specific findings of fact regarding these OVs. Thus, defendant's sentence should be based solely on his PRV level. Defendant's PRV level was two points, which placed him in the B-I cell. The B-I cell provides a sentence range of zero to 11 months for a second-offense habitual offender. MCL 777.65; MCL 777.21(3)(a). This is an intermediate sanction cell. MCL 769.34(4)(a). Therefore, defendant was entitled to an intermediate sanction sentence. As discussed above, this means a maximum sentence of 11 months in jail.

But the trial court made judicial findings of fact using a preponderance of the evidence to score OVs 1, 2, and 3. These judicial findings increased defendant's maximum sentence because they moved defendant into a straddle cell. At that point, he was no longer entitled to an intermediate sanction sentence. Because the judge's findings of fact increased defendant's maximum sentence, they violated defendant's Sixth Amendment rights. Defendant suffered a greater stigma through an increased sentence than the stigma he would have been subjected to had his sentence been based solely on his PRV level. This increased stigma undermines the basic concepts of the right to trial by jury and defeats the

21

intent of the Founding Fathers to ensure a publicly controlled judiciary. *Apprendi*, 530 US 483-484.

Just as in the *Ring* case, scoring the OVs here was the functional equivalent of convicting defendant of a different criminal offense. Although he had been convicted only of assault with intent to do great bodily harm less than murder, he was sentenced for an assault with intent to do great bodily harm less than murder (1) in which the victim was touched by a weapon,[12] (2) in which defendant possessed a potentially lethal weapon,[13] and (3) in which the victim suffered life threatening or permanent incapacitating injury.[14] Just as in *Ring*, the Sixth Amendment requires that the jury find beyond a reasonable doubt the facts that enhanced defendant's guilt. *Ring*, 536 US 609.

Some may argue that the statutory maximum was the maximum sentence allowed by law and not the intermediate sanction sentence of 11 months. The argument is that all defendants in Michigan should assume that they will receive the statutory maximum because they do not know how the judge will score the OVs at sentencing. This reasoning is inaccurate and is directly contradicted by the *Blakely* line of cases.

---

[12] This was the finding under OV 1. MCL 777.31(1)(d).

[13] This was the finding under OV 2. MCL 777.32(1)(e).

[14] This was the finding under OV 3. MCL 777.33(1)(c).

In fact, both *Blakely* and *Booker* make clear that it is not relevant that the possibility exists for the judge to depart from the statutory maximum sentence in some circumstances. It is not relevant that the maximum sentence could increase with additional fact-finding by the judge. *Booker*, 543 US 234-235; *Blakely*, 542 US 304. Under *Blakely*, the statutory maximum in this case remains the 11-month intermediate sanction sentence even though the judge was empowered to increase it after additional fact-finding. *Blakely* succinctly explained the Supreme Court's reasoning on this point:

> The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. Those facts alone were insufficient because, as the Washington Supreme Court has explained, "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense," [*State* v] *Gore*, [143 Wash 2d 288, 315-316; 21 P3d 262 (2001)], which in this case included the elements of second-degree kidnapping and the use of a firearm, see [Wash Rev Code] 9.94A.320, 9.94A.310(3)(b). Had the judge imposed the 90-month sentence solely on the basis of the plea, he would have been reversed. See [Wash Rev Code] 9.94A.210(4). The "maximum sentence" is no more 10 years here than it was 20 years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) or death in *Ring* (because that is what the judge could have imposed upon finding an aggravator). [*Id.*]

In the instant case, had the judge sentenced defendant to a maximum of 15 years without scoring the OVs or making additional fact-finding, he would have committed error requiring reversal. The same rule of law applies as in *Ring*, *Blakely*, and *Booker*. Despite the fact that the statute permits a different maximum

23

in some situations, sentencing a defendant to that maximum on the basis of judicial fact-finding constitutes a violation of the Sixth Amendment.

Some also argue that the *Blakely* line of cases does not affect Michigan's sentencing guidelines because Michigan has an indeterminate sentencing scheme. I would agree with this assessment in cases in which the defendant's PRV level places the defendant somewhere other than in an intermediate sanction cell. But I disagree with respect to cases in which the indeterminate sentencing scheme sets two possible maximums,[15] which is exactly what occurs in cases involving intermediate sanction cells. In these cases, the indeterminate sentencing scheme resembles the determinate sentencing schemes discussed in the *Blakely* line of cases. *Blakely* itself contains a discussion of the difference between indeterminate and determinate schemes:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts

---

[15] Here, the two possible maximums were 15 years (set by MCL 750.84 and MCL 769.10) and 11 months (set by the guidelines).

24

do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury. [*Id*. at 308-309 (emphasis in original; citations omitted).]

Once this reasoning is applied to the instant case, the problem posed by Michigan's sentencing scheme becomes apparent. It would be one thing if every second-offense habitual offender convicted of assault with intent to do great bodily harm less than murder faced the same 15-year maximum. Then, there would be no problem with judicial fact-finding that results in a sentence in the range of zero to 15 years. But that is not the case. Some second-offense habitual offenders convicted of assault with intent to do great bodily harm less than murder face a maximum sentence of 11 months. They are offenders whose criminal records do not support the scoring of the OVs.[16] These offenders are entitled to a sentence falling within an intermediate sanction cell. *Id*.

Given that there are two possible maximum sentences for the offense in question, a defendant is entitled to whichever is supported by the conviction and his or her admissions and criminal record alone. "[A]nd by reason of the Sixth Amendment the [additional] facts bearing upon that entitlement must be found by

---

[16] These would be the equivalent of *Blakely's* "burglar who enters a home unarmed." *Blakely*, 542 US 309.

a jury." *Id*. at 309. Therefore, if certain other facts are necessary to move the defendant to the higher maximum sentence, they must be proven to the jury beyond a reasonable doubt.[17]

In this case, the judge moved defendant from the 11-month maximum to the 15-year maximum. He did this using facts that he determined to be true by a mere preponderance of the evidence. The prosecution was not put to its proofs regarding these facts, and defendant faced an increased sentence without the full opportunity to challenge the facts the prosecution claims support it. This is exactly the problem recognized by *Blakely*. And it constitutes a Sixth Amendment violation.

The argument has also been made that no defendant is entitled to a sentence in Michigan until after the OVs have been scored. See MCL 777.21. It is this argument on which the majority bases its decision. This argument does not survive even casual inspection, and the *Blakely* line of cases clearly contradicts it. Essentially, it boils down to a claim that judicial fact-finding should occur to determine if judicial fact-finding should occur. It is a claim that the court should be able to make some judicial fact-finding. If, as a consequence, the guidelines

---

[17] The majority ignores this unusual nature of intermediate sanction cells as compared to a traditional indeterminate scheme. And it states that Michigan's sentencing scheme is indeterminate, period. But, because intermediate sanction cells set maximum sentences, Michigan's sentencing scheme in these cases is distinct from the traditional indeterminate scheme and, for Sixth Amendment purposes, is properly viewed as determinate.

place a defendant in an intermediate sanction cell, no more judicial fact-finding would be appropriate. But, the claim continues, if initially the court's fact-finding moves the sentence beyond an intermediate sanction cell, more judicial fact-finding would be acceptable.

I find this argument intellectually disingenuous and circular. Nowhere in *Blakely* or in any of the other related cases does the Supreme Court indicate that any initial judicial fact-finding is appropriate. In fact, all the cases specifically *contradict* this contention:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. [*Booker*, 543 US 244.]

Any fact means any fact. Certain facts are not excepted, and no exception is made for an initial round of fact-finding. The holding of the *Blakely* line of cases is simple: Any facts, aside from past convictions, that increase a defendant's maximum sentence must be either admitted by the defendant or proven to a jury beyond a reasonable doubt.

The majority ignores this central tenet of the *Blakely* line of cases. It is irrelevant that a defendant would or could receive a higher sentence under the traditional application of the sentencing scheme. A defendant is *entitled* to the maximum sentence authorized by the defendant's past convictions and the facts admitted or established during a guilty plea or by a jury verdict. *Id*. A defendant's

27

sentence must not be based on facts later found by a judge using a preponderance of the evidence standard.

MCL 777.21 does not change this central tenet. The statute is similar to the statute in *Ring*. In *Ring*, the statute directed the judge to conduct a separate sentencing hearing to determine the existence of specified circumstances in order to decide whether to impose death or life imprisonment. *Ring*, 536 US 592.

The fact that it is possible to impose a higher sentence under the sentencing scheme is not relevant. A defendant is *entitled* to a sentence based solely on the jury verdict and the defendant's admissions and criminal history. The Supreme Court explained:

> In an effort to reconcile its capital sentencing system with the Sixth Amendment as interpreted by *Apprendi*, Arizona first restates the *Apprendi* majority's portrayal of Arizona's system: Ring was convicted of first-degree murder, for which Arizona law specifies "death or life imprisonment" as the only sentencing options, see Ariz. Rev. Stat. Ann. § 13-1105(C) (West 2001); Ring was therefore sentenced within the range of punishment authorized by the jury verdict. See Brief for Respondent 9-19. This argument overlooks *Apprendi*'s instruction that "the relevant inquiry is one not of form, but of effect." 530 U.S., at 494. In effect, "the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict." [*Id*. at 603-604.]

Defendant in this case was exposed to a greater punishment than was authorized by the jury's verdict. This was a violation of the Sixth Amendment. *Id*. at 609.

THE CURE FOR THE CONSTITUTIONAL VIOLATION

The fact that intermediate sanction cells exist does not necessarily render Michigan's sentencing guidelines statutes unconstitutional. There are legally valid

applications of this portion of the guidelines. Also, legally valid applications can be made of the nonintermediate sanction cells. For instance, a defendant's PRV level alone could place the defendant in a straddle cell or a cell requiring a prison sentence without further judicial fact-finding.

A problem of constitutional magnitude arises, however, when someone is moved out of an intermediate sanction cell into a straddle cell or beyond by judicial fact-finding. In such situations, the application of the guidelines violates the defendant's Sixth Amendment right to have all the facts that increase the sentence proven to a jury beyond a reasonable doubt. The only exceptions are the defendant's criminal record and facts admitted by the defendant.

The question becomes: How can this constitutional problem be eliminated? The Court could declare the offending portions of the guidelines unconstitutional and simply sever them from the statutes. I believe this is not feasible. A significant portion of the guidelines involves intermediate sanction cells. The sentences for all class G and H felonies fall in an intermediate sanction cell without consideration of the OVs. MCL 777.68 and MCL 777.69. All class F felonies fall in an intermediate sanction cell if the defendant has fewer than 50 PRV points. MCL 777.67. All class E felonies fall in an intermediate sanction cell if the defendant has fewer than 25 PRV points. MCL 777.66. All class D felonies fall in an intermediate sanction cell if the defendant has fewer than 50 PRV points. MCL 777.65. All class C felonies fall in an intermediate sanction cell if the defendant has fewer than ten PRV points. MCL 777.64. The sentences

of class B felons having zero PRV points fall in an intermediate sanction cell. MCL 777.63. And the sentence of no class M2 or A felon could fall in an intermediate sanction cell. MCL 777.61 and 777.62.

Given these facts, the magnitude of the problem becomes apparent. Nearly every felony could present a *Blakely* problem if the defendant has a certain number of PRV points. The comprehensive nature of the problem raises a serious question whether severance is possible. The Legislature encourages saving statutes and acts through severance:

> In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:
>
> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable. [MCL 8.5.]

To determine whether severance is appropriate, this Court must consider whether the portion of the act remaining after the unconstitutional portion has been severed is capable of functioning alone. *Blank v Dep't of Corrections*, 462 Mich 103, 123; 611 NW2d 530 (2000), quoting *Maki v East Tawas*, 385 Mich 151, 159; 188 NW2d 593 (1971). The Court must also focus on the intent of the Legislature; if the Legislature would not have enacted the act without the severed provisions, the Court cannot sever them. *People v McMurchy*, 249 Mich 147, 157-159; 228

30

NW 723 (1930), quoting 1 Cooley, Constitutional Limitations (8th ed), pp 359-363.

I believe that the portions of the guidelines that are unconstitutional are so entangled with the others that they cannot be removed without adversely affecting the guidelines as a whole. The judicial fact-finding required by the sentencing guidelines would be inappropriate with respect to most crimes. An attempt to save the rest of the guidelines would engender confusion in the courts. Defendants, lawyers, and judges would be left guessing at the start of trial which sentencing method will be appropriate and whether judicial fact-finding will later be required or permitted. The prosecution will not be certain about all the facts it will have to prove to the jury. These inconsistencies and uncertainties mitigate against severance. Instead, the act as a whole would have to be found invalid. *Blank*, 462 Mich 123.

In addition, the judge would find it difficult to identify the offending sections of the sentencing guidelines statutes. For one defendant convicted of a crime, it would be appropriate to score the OVs. For another convicted of the same crime, it would not be permissible to score the OVs because the defendant's PRV level would place that defendant's sentence in an intermediate sanction cell. The same statutory scheme could apply differently depending on the situation. This is a classic example of entanglement, and it signals that severance is simply not possible. *Id*.

It is also unlikely that the Legislature would have passed only part of the sentencing guidelines. It intended the guidelines to be comprehensive. *People v Garza*, 469 Mich 431, 434-435; 670 NW2d 662 (2003). Some of its specific goals were to eliminate sentencing disparity and to ensure that certain crimes that do not warrant prison time result in appropriate sentences. *Id*. at 435. Severing the portions pertaining to intermediate sanction cells would work against both of these goals. Most importantly, it would directly thwart the Legislature's intent to enact a comprehensive system of sentencing. Everything considered, severance is not appropriate. *McMurchy*, 249 Mich 157-159.

Given that conclusion, this Court must find that Michigan's sentencing guidelines statutes are no longer valid as applied. The question then becomes how sentencing should occur in the future. There have been three options presented to this Court. First, the Court could find the guidelines merely advisory. This is the solution reached by the United States Supreme Court in *Booker*. *Booker*, 543 US 227. But I believe it is inappropriate in this case.

From 1983 to 1998, Michigan's sentencing guidelines were not furnished by the Legislature but by the Court, through administrative orders. They were not mandatory. Judges rendering sentences were obliged to use the guidelines to calculate a sentencing range in each case. But they were not required to sentence convicted parties within those guidelines ranges. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). The Legislature's guidelines replaced the merely advisory judicial guidelines and mandated that judges sentence within the

statutory guidelines with few exceptions. To render the statutory guidelines advisory would be directly contrary to the Legislature's intent.

The second possible solution is to strike down the guidelines as unconstitutional. This would allow the judges wide discretion in sentencing defendants. The only limitation would be the absolute maximum sentence provided by law. Although this is a better option than the first, it too has serious flaws. Primarily, allowing such discretion would defeat the intent of the Legislature to eliminate sentence disparity. *Garza*, 469 Mich 435. More than likely, this solution would ensure sentence disparity.

I believe a third option is the most appropriate and the most consistent with the Legislature's intent regarding sentencing. The third option is to find the sentencing guidelines statutes unconstitutional as applied, but specify how they could operate so as to pass constitutional scrutiny. This would require replacing judicial fact-finding with jury determinations. After a guilty verdict, the prosecution would be required to list the specific OVs that it wished the jury to score. Then, in a bifurcated hearing, the prosecutor would present to the jury evidence regarding each variable. The defense could respond, as in a trial. The jury would then deliberate and make specific findings regarding the OVs. It would indicate which the prosecution proved beyond a reasonable doubt. Because the jury would make the determinations, there would be no constitutional impediment to increasing a defendant's sentence from an intermediate sanction cell to a straddle cell sentence.

This solution would ensure that the Legislature's intent in enacting the guidelines would be fulfilled. Sentence disparity would be diminished. At the same time, defendants would be afforded full Sixth Amendment protection because the prosecution would be put to its proofs. Given the benefits of this solution, I find it to be the best option available. Therefore, I would require all future sentencing to employ the bifurcated jury procedure where appropriate.

CONCLUSION

Today, unfortunately, the majority fails to recognize the effects on Michigan's sentencing guidelines statutes of the United States Supreme Court rulings in the *Blakely* line of cases. This case illustrates that a grave constitutional problem arises in this state when *Blakely* is correctly applied. Specifically, the judicial fact-finding that moved defendant McCuller's sentence from an intermediate sanction cell to a straddle cell violated McCuller's Sixth Amendment right to trial by jury. Given that a large portion of Michigan's sentencing guidelines involves intermediate sanction cells that intertwine with the rest of the guidelines, the unconstitutional sections cannot be severed. Hence, the entire guidelines must be found unconstitutional when applied as they were in this case.

In future cases, Michigan trial judges should implement a bifurcated hearing system. And the prosecution should be required, after a guilty verdict, to submit the facts not admitted and necessary for scoring the OVs to a jury for resolution beyond a reasonable doubt. These changes would effectuate the

Legislature's intent in passing the sentencing guidelines statutes and would best protect defendants' constitutional rights in this state.

The case should be remanded to the trial court for resentencing.

Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No.  128161

RAYMOND A. MCCULLER,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I agree with the rationale and proposed result of Justice Kelly's dissent concluding that in this intermediate sanction cell case, Michigan's sentencing guidelines are unconstitutional as applied. But I disagree with Justice Kelly with respect to the proposed cure for the constitutional violation. In my view, a bifurcated system in these types of cases would be overly taxing on the judiciary and the jury. Instead, I believe the sounder approach would be for the prosecution to charge the aggravating factors in the information and request a special verdict from the jury if the prosecution wants offense variable points assessed in these types of cases. And, if the prosecution fails to abide by this process, the trial court *must* give the intermediate sanction. Accordingly, this cure would be less burdensome on the criminal justice system, as well as ensure that a defendant's constitutional rights are protected.

                              Michael F. Cavanagh