**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 13, 2006

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                   No. 127489

JOSEPH ERIC DROHAN,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider whether Michigan's indeterminate sentencing scheme, which allows a trial court to set a defendant's minimum sentence on the basis of factors determined by a preponderance of the evidence, violates the Sixth Amendment of the United States Constitution. Following a jury trial, defendant was convicted of one count of third-degree criminal sexual conduct, MCL 750.520d(1)(b), and one count of fourth-degree criminal sexual conduct, MCL 750.520e(1)(b). Defendant also pleaded guilty to a charge of being a third-offense habitual offender, MCL 769.11. The trial court sentenced defendant to a term of 127 to 360 months of incarceration on the third-degree

criminal sexual conduct conviction. This range was calculated by the trial court's assignment of points to defendant's "offense variable" and "prior record variable" scores under a "preponderance of the evidence" standard. Defendant appealed his sentence, asserting that it was imposed contrary to the United States Supreme Court's decision in *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), because the sentence was based on facts that were not determined by the jury beyond a reasonable doubt. The Court of Appeals affirmed the conviction, relying on this Court's decision in *People v Claypool*, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004). Because we conclude that Michigan's sentencing scheme does not offend the Sixth Amendment,[1] we affirm defendant's sentence.

---

[1] The amicus curiae brief of the Criminal Defense Attorneys of Michigan at page 11 points out that the guidelines' "intermediate sanctions" establish fixed and determinate sentences. MCL 769.34(4)(a) states:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

Because defendant here was not subject to an intermediate sanction, we decline to address whether and to what extent *Blakely* affects the intermediate sentencing scheme.

## I. BACKGROUND

The victim in this case and defendant were coworkers. She testified that defendant sexually assaulted her on four separate occasions between July 17, 2002, and October 25, 2002. The first incident took place on July 17, when defendant asked the victim to assist him with his computer at his cubicle. While there, defendant grabbed her hand and placed it on his clothed penis. In addition, defendant rubbed her clothed breast. The second incident occurred on July 19 at about 2:00 p.m. At that time, defendant entered the victim's cubicle, again grabbed her hand and placed it over his penis, and made a sexual comment. The third incident occurred at around 4:00 p.m. on that same day. The victim testified that defendant accosted her in the parking garage and forced her into his car. Defendant demanded oral sex, and, when she refused, he grabbed the back of her head and forced her to perform oral sex until he ejaculated. The final incident took place on October 25 while the company was moving its office to a new location. As the victim moved things out of her cubicle, defendant entered, grabbed her hand and placed it over his penis, and made a sexual comment. The victim did not report any of these incidents until after defendant left the company. Defendant was prosecuted for one count of third-degree criminal sexual conduct and two counts of fourth-degree criminal sexual conduct. The jury convicted defendant of third-degree criminal sexual conduct and one count of fourth-degree criminal sexual conduct. Following the verdict, defendant pleaded guilty of being a third-offense habitual offender, MCL 769.11.

At sentencing, the trial court scored ten points for offense variable 4 (psychological injury to a victim) and 15 points for offense variable 10 (exploitation of a vulnerable victim).[2] Defendant's total score placed him in the C-V cell,[3] and the trial court sentenced him at the high end of the guidelines to a minimum term of 127 months and a maximum term of 360 months on the third-degree criminal sexual conduct conviction.[4] Defendant was also sentenced to a concurrent term of 12 to 48 months on the fourth-degree criminal sexual conduct conviction.

Defendant appealed, asserting that his minimum sentence violated the United States Supreme Court's decision in *Blakely* because it was based on judicially ascertained facts that had not been determined by the jury beyond a reasonable doubt. Pursuant to *Claypool,* the Court of Appeals affirmed defendant's convictions and sentence, observing that *Blakely* does not apply to Michigan's sentencing scheme. *People v Drohan*, 264 Mich App 77, 89 n 4; 689

---

[2] Defendant successfully challenged the scoring of 15 points for offense variable 8 (victim asportation or captivity). The trial court scored offense variable 8 at zero points. The reduction of 15 points did not alter the guidelines range.

[3] The minimum sentence range in the C-V cell is 51 months to 127 months.

[4] As a third-offense habitual offender, defendant was subject to "imprisonment for a maximum term that is not more than twice the longest term prescribed by law for a first conviction of that offense . . . ." MCL 769.11(1)(a). The maximum term for a first conviction of third-degree criminal sexual conduct is 15 years. MCL 750.520d(2). Therefore, the maximum term for a third-offense habitual offender is 30 years.

NW2d 750 (2004).[5] This Court granted defendant's application for leave to appeal, limited to the issue whether *Blakely* applies to Michigan's sentencing scheme. 472 Mich 881 (2005).

## II. STANDARD OF REVIEW

The issue in this case concerns whether Michigan's sentencing scheme violates the Sixth Amendment of the United States Constitution because it permits a defendant's minimum sentence to be determined on the basis of facts not proven to the jury beyond a reasonable doubt. A Sixth Amendment challenge presents a question of constitutional law that we review de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

## III. ANALYSIS

### A. UNITED STATES SUPREME COURT

The Sixth Amendment of the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation . . . .

The United States Supreme Court first addressed the Sixth Amendment implications of the enhancement of a defendant's sentence based on judicially

---

[5] The Court of Appeals rejected defendant's argument that *Claypool* was not binding. However, the Court went on to note that "given the large number of recent criminal appeals in which this issue has been raised, we request that the Supreme Court issue its opinion concerning whether footnote fourteen in *Claypool* constitutes binding precedent." *Id*. (emphasis omitted).

5

ascertained facts in *McMillan v Pennsylvania,* 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986)*.* In *McMillan*, a Pennsylvania statute imposed a five-year mandatory minimum sentence if the trial court concluded, by a preponderance of the evidence, that a defendant "'visibly possessed a firearm'" during the commission of an enumerated felony. *Id.* at 81. However, the sentencing statute did not permit a sentence in excess of the maximum established for the enumerated felonies.[6] The defendants, relying on *In re Winship*, 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970),[7] argued that the visible possession of a firearm constitutes an element of the offense, and, therefore, must be proven beyond a reasonable doubt. The Court, while noting that the Pennsylvania statute provided that the possession of a firearm was "not an element of the [enumerated] crimes," *McMillan, supra* at 85-86, opined that this provision did not "relieve the

---

[6] At the time, Pennsylvania law provided that a mandatory minimum sentence "'shall not exceed one-half of the maximum sentence imposed.'" *Id.* at 88 n 4, quoting 42 Pa Cons Stat 9756(b).

[7] In *In re Winship*, the United States Supreme Court addressed the issue whether the "proof beyond a reasonable doubt" standard applies to determinations of delinquency where a minor is charged with an act that would constitute a crime if committed by an adult. The Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. The Court reasoned that adjudications of delinquency, like criminal convictions, deprive a minor of his or her liberty for some period and, therefore, that such adjudications are "'comparable in seriousness to a felony prosecution.'" *Id.* at 366 (citation omitted). Accordingly, every fact necessary to adjudicate a minor as delinquent must be proven by the state beyond a reasonable doubt. *Id.* at 368.

prosecution of its burden of proving guilt . . . ." *Id.* at 87. Nonetheless, the Court found it significant that the statute

> neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. [*Id.* at 87-88.]

The Court went on to note that the defendants' claims "would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment . . . ." *Id.* at 88. However, the Pennsylvania statute merely raised the minimum sentence that could be imposed by the trial court. Because the minimum sentence did not alter the maximum penalty authorized by the jury's verdict, the statute did not violate the Constitution.

While *McMillan* sanctioned the use of judicially ascertained facts to establish a minimum sentence, the United States Supreme Court, in *Jones v United States*, 526 US 227, 239; 119 S Ct 1215; 143 L Ed 2d 311 (1999), stated that the use of such facts to *increase* the maximum sentence posed "'grave and doubtful constitutional questions . . . .'" (Citation omitted.) In *Jones*, the defendant was convicted of violating the federal carjacking statute. The statute called for a 15-year maximum, but also provided for a 25-year maximum where the victim suffered serious bodily injury, and a potential life term where the victim was killed. 18 USC 2119. The trial court imposed a 25-year sentence, determining by a preponderance of the evidence that the victim had suffered "serious bodily injury." The defendant argued that the statute created three distinct offenses,

7

while the prosecutor argued that the statute created a single crime with the choice of three maximum penalties. In analyzing which interpretation of the statute should prevail, the Court observed that,

> under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Because our prior cases suggest rather than establish this principle, our concern about the Government's reading of the [carjacking] statute rises only to the level of doubt, not certainty. [*Jones, supra* at 243 n 6.]

As a result of these concerns, the Court held that the statute established three separate offenses and, therefore, reversed the defendant's conviction.

The following year, in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court acted on the concerns it had expressed in *Jones*. In *Apprendi*, the defendant was sentenced to an additional two years above the statutory maximum, on the basis of the trial court's determination by a preponderance of the evidence that the defendant had acted with an intent to intimidate an individual based on that individual's race. The Court undertook its analysis by noting that the Fourteenth Amendment "due process" clause and the Sixth Amendment "right to jury trial," considered together, "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* at 477, quoting *United States v Gaudin*, 515 US 506, 510; 115 S Ct 2310; 132 L Ed 2d 444 (1995). At the time of the American Revolution,

8

a trial court had very little discretion in sentencing. *Apprendi, supra* at 479.

Rather, there was generally a specific sanction for each criminal offense-- a

sanction determined by a jury's verdict. *Id.* The Court explained that, during this

period, where a statute created a higher degree of punishment than the common

law, the prosecutor

> "must expressly charge it to have been committed under those
> circumstances [established in the statute], and must state the
> circumstances with certainty and precision. [2 M. Hale, Pleas of the
> Crown *170]." Archbold, Pleading and Evidence in Criminal Cases,
> at 51. If, then, "upon an indictment under the statute, the prosecutor
> prove the felony to have been committed, but fail in proving it to
> have been committed under the circumstances specified in the
> statute, the defendant shall be convicted of the common-law felony
> only." *Id.* at 188. [*Apprendi, supra* at 480-481.]

The 19th century shift away from fixed sentences gave trial courts increasingly

broad discretion in sentencing. However, such discretion was limited by "'fixed

statutory or constitutional limits.'" *Id.* at 482, quoting *Williams v New York*, 337

US 241, 247; 69 S Ct 1079; 93 L Ed 1337 (1949). Thus, just as in revolutionary

times, a defendant's maximum sentence was fixed by the maximum sentence

permitted at the time of the jury's verdict. In contrast, the New Jersey statute

permitted a trial court to sentence a defendant beyond the maximum fixed by the

statute that served as the basis for the jury's conviction. The Court stated:

> If a defendant faces punishment beyond that provided by
> statute when an offense is committed under certain circumstances
> but not others, it is obvious that both the loss of liberty and the
> stigma attaching to the offense are heightened; it necessarily follows
> that the defendant should not -- at the moment the State is put to
> proof of those circumstances -- be deprived of protections that have,
> until that point, unquestionably attached. [*Apprendi, supra* at 484.]

9

Accordingly, the Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Thus, any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict[,]" *id.* at 494, is an element of the crime that must be proven beyond a reasonable doubt. Conversely, a fact "that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense[,]" *id.* at 494 n 19 (emphasis in the original), is a sentencing factor that does not implicate the Sixth Amendment.

The United States Supreme Court reinforced this decision two years later, in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d 524 (2002). In *Harris*, the defendant pleaded guilty of distribution of marijuana. At sentencing, the trial court determined by a preponderance of the evidence that the defendant had brandished a firearm during the drug transaction and, as a result, imposed a seven-year minimum, as required under 18 USC 924 (c)(1)(A)(ii).[8] The

_____

[8] The statute, which has not been amended in any relevant manner since *Harris*, states in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --

(continued…)

10

trial court did not alter the defendant's maximum sentence. The defendant argued that the imposition of a minimum sentence violated *Apprendi* and that, as a result, *McMillan* was no longer sound authority. Justice Kennedy, writing for a four-justice plurality, noted that the Sixth Amendment requires that "'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Harris, supra* at 563, quoting *Apprendi, supra* at 490. However, once the defendant has been convicted of an offense, "the Government has been authorized to impose any sentence below the maximum." *Harris, supra* at 565. The defendant also argued that mandatory minimum sentences violated "the concerns underlying *Apprendi*," *id.,* because they require a trial court to impose a sentence even if it would have otherwise chosen a lower sentence. However, Justice Kennedy noted that "[t]he Fifth and Sixth Amendments ensure that the defendant 'will never get more punishment than he bargained for when he did the crime,' but they do not promise that he will receive 'anything less' than that." *Id.* at 566, quoting *Apprendi, supra* at 498 (Scalia, J., concurring) (emphasis omitted). Justice Kennedy concluded:

---

(…continued)

        (i) be sentenced to a term of imprisonment of not less than 5 years;

        (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

        (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

11

Read together, *McMillan* and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis. Within the range authorized by the jury's verdict, however, the political system may channel judicial discretion -- and rely upon judicial expertise -- by requiring defendants to serve minimum terms after judges make certain factual findings. [*Harris, supra* at 567.][9]

The United States Supreme Court clarified the importance of the term "statutory maximum" within the meaning of sentencing guidelines in *Blakely*. In that case, the defendant pleaded guilty to a charge of second-degree kidnapping. While the statute called for a ten-year maximum sentence, under Washington's sentencing guidelines scheme, the defendant was subject to a fixed sentence within a "standard range" of between 49 to 53 months. The guidelines statute permitted a trial court to depart above the guidelines maximum, up to the statutory maximum of ten years, if it found "substantial and compelling" reasons to do so. The trial court determined that the defendant acted with "deliberate cruelty" and, therefore, sentenced him to 90 months-- 37 months beyond the standard maximum. The

---

[9] Justice Breyer, one of the dissenting justices in *Apprendi*, concurred in the judgment in *Harris*, stating:

I continue to believe that the Sixth Amendment permits judges to apply sentencing factors -- whether those factors lead to a sentence beyond the statutory maximum (as in *Apprendi*) or the application of a mandatory minimum (as here). And because I believe that extending *Apprendi* to mandatory minimums would have adverse practical, as well as legal, consequences, I cannot yet accept its rule. I therefore join the Court's judgment, and I join its opinion to the extent that it holds that *Apprendi* does not apply to mandatory minimums. [*Id.* at 569-570 (Breyer, J., concurring in part and concurring in the judgment).]

prosecutor argued that the sentence was consistent with *Apprendi* because it fell below the ten-year statutory maximum. However, the Court noted:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . .* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. [*Blakely, supra* at 303-304 (emphasis in the original).]

The defendant's prior convictions and the facts elicited from his guilty plea, by themselves, could not have supported the imposition of the 90-month sentence. *Id.* at 304. Therefore, "the State's sentencing procedure did not comply with the Sixth Amendment, [and the defendant's] sentence is invalid." *Id.* at 305. However, the Sixth Amendment does not prohibit all judicial fact-finding. In addressing indeterminate sentencing schemes,[10] the Court stated:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on

---

[10] An indeterminate sentence is one "of an unspecified duration, such as one for a term of 10 to 20 years." Black's Law Dictionary (8th ed). In other words, while a defendant may serve a sentence of up to 20 years, the defendant may be released from prison at the discretion of the parole board at any time after the defendant serves the ten-year minimum. In contrast, a determinate sentence is "[a] sentence for a fixed length of time rather than for an unspecified duration." *Id.* Such a sentence can either be for a fixed term from which a trial court may not deviate, see, e.g., MCL 750.227b(1) ("A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . shall be imprisoned for 2 years."), or can be imposed by the trial court within a certain range, e.g., *Blakely, supra* at 300 (stating that, under Washington's sentencing act, the defendant was entitled to a sentence within a range of 49 to 53 months.)

13

the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence--and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence--and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury. [*Id.* at 308-309 (emphasis in the original).]

Last year, the United States Supreme Court applied the Sixth Amendment to the federal sentencing guidelines in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). In *Booker*, the defendant was convicted of possession with intent to distribute at least 50 grams of crack cocaine. The evidence elicited at trial established that he had possessed 92 grams of cocaine. The statute called for a minimum sentence of ten years in prison and a maximum sentence of life in prison. 21 USC 841(b)(1)(A)(iii). On the basis of the defendant's criminal history and the quantity of drugs that the jury found that he possessed, the sentencing guidelines dictated a sentence of 210 to 262 months in prison. At sentencing, the trial court found two additional facts by a preponderance of evidence: (1) that the defendant had possessed an additional 566 grams of crack cocaine, and (2) that the defendant had also committed obstruction of justice. Those findings mandated that the trial court select a sentence between

14

360 months and life imprisonment, and the court imposed a sentence of 360 months in prison. Just as in *Blakely, t*he Court focused on the mandatory nature of the sentencing guidelines. *Booker, supra* at 749-750. Solely on the basis of the defendant's criminal history and the facts supported by the jury's verdict, the trial court could not have imposed the 360-month sentence. *Id.* at 751. The Court concluded that,

> just as in *Blakely*, "the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." There is no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in these cases. [*Id.,* quoting *Blakely, supra* at 305 (citation omitted).]

Therefore, the Court "reaffirm[ed] [its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker, supra* at 756. However, just as in *Blakely*, the Court did not hold that *all* judicial fact-finding violates the Sixth Amendment. Indeed, the Court clarified that,

> [i]f the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . For when a trial judge exercises his discretion to select a specific sentence within a

15

defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant. [*Id.* at 750.][11]

The constitutional rule of *Apprendi, Blakely,* and *Booker* can be summarized as follows: (1) a trial court may not impose a sentence greater than the statutory maximum unless it does so on the basis of a prior conviction or the fact at issue is "admitted by the defendant or proved to a jury beyond a reasonable doubt[,]" *Booker, supra* at 756; (2) where a defendant's maximum sentence is calculated through the use of mandatory sentencing guidelines, the statutory maximum is the maximum sentence that may be imposed under those guidelines, based solely on the defendant's prior convictions and those facts proven beyond a reasonable doubt, *Blakely, supra* at 303-304; and (3) a trial court *may* consider facts and circumstances not proven beyond a reasonable doubt in imposing a sentence within the statutory range, *McMillan, supra; Harris, supra; Booker, supra*.

## B.  AFTERMATH

State courts, consistently with *Apprendi, Blakely,* and *Booker*, have held that that the Sixth Amendment bars the use of judicially ascertained facts to increase a defendant's sentence only when that sentence is increased beyond the "statutory maximum."  For example, the New Jersey Supreme Court recognized in

---

[11] In a separate majority opinion, authored by Justice Breyer, the Court limited application of its opinion to the portion of the sentencing guidelines that made them mandatory.  As a result, the federal guidelines are now advisory.  *Id.* at 756-757.

*State v Abdullah*, 184 NJ 497; 878 A2d 746 (2005), that the applicability of *Blakely* hinges on the question whether the trial court uses judicially ascertained facts to impose a sentence above the statutory maximum. In *Abdullah*, the defendant was convicted of murder and two counts of second-degree burglary. The defendant was sentenced to life imprisonment with a 30-year parole disqualifier on the murder conviction and to a consecutive ten-year prison term with a five-year parole disqualifier on the burglary convictions. Under New Jersey law, a defendant convicted of burglary is entitled to a presumptive sentence of seven years. *Id.* at 503. Because the defendant was entitled to no more than the seven-year sentence for burglary on the basis of the jury's verdict alone, imposition of the ten-year sentence on the basis of judicially ascertained facts was "'incompatible with the holdings in [*Apprendi, Blakely, and Booker*]. '" *Id.* at 505 (citation omitted). On the other hand, the court noted that there is no presumptive term for murder. *Id.* at 504. "'[B]ecause the crime of murder has no presumptive term, defendant, like every murderer, knows he is risking life in prison.'" *Id.* at 508 (citation omitted). Thus, the upper sentencing limit based on the jury's verdict alone was life imprisonment. Accordingly, the murder sentence was not in derogation of the Sixth Amendment. See also *State v Stover*, 140 Idaho 927, 931; 104 P3d 969 (2005) (stating that "[t]he *Blakely* Court recognized that an indeterminate sentencing system does not violate the Sixth Amendment"); *State v Rivera*, 106 Hawaii 146, 157; 102 P3d 1044 (2004) (noting that "the *Blakely* majority's declaration that indeterminate sentencing does not abrogate the jury's

17

traditional factfinding function effectively excises indeterminate sentencing schemes such as Hawaii's from the decision's sixth amendment analysis"); *Commonwealth v Junta*, 62 Mass App Ct 120, 129 n 11; 815 NE2d 254 (2004) (finding that "[t]he recent United States Supreme Court decision in [*Blakely*] has no application here, as the Massachusetts sentencing scheme provides for indeterminate sentences").

The courts in Pennsylvania, a state with a sentencing scheme bearing a strong resemblance to Michigan's, have also held that the use of judicially ascertained facts to increase a defendant's minimum sentence is permitted by the Sixth Amendment. The Pennsylvania Superior Court addressed the implications of *Blakely* on its sentencing scheme in *Commonwealth v Smith*, 863 A2d 1172 (Pa Super, 2004). In *Smith*, the defendant claimed that Pennsylvania's sentencing scheme violated *Blakely*, because it allowed a trial court to use judicially ascertained facts to increase the defendant's minimum sentence. The court rejected this claim, noting that

> Pennsylvania utilizes an indeterminate sentencing scheme with presumptive sentencing guidelines which limit the judge's discretion only concerning the minimum sentence. 42 Pa. C.S.A. § 9721; 204 Pa. Code § 303.9(h). The United States Supreme Court has previously determined that this system does not violate the Sixth Amendment so long as the enhanced minimum sentence is not beyond that authorized by the jury verdict. [*Harris*, *supra*]. Because of the link with the maximum sentence, enhanced minimum sentences, when enhanced by factors in the guidelines, are not beyond sentences authorized by the jury verdict. [*McMillan, supra*]. *Blakely* is only implicated in Pennsylvania to the extent that an enhanced minimum term leads to a longer period of incarceration by extending the date at which the defendant is eligible to be released.

Yet, because there is no limit, other than the statutory maximum, on the maximum term a judge may set, and due to the discretion vested in the parole board, the Pennsylvania sentencing scheme and guidelines evade even these *Blakely* concerns. The *Blakely* Court, itself, noted that indeterminate guidelines do not increase judicial discretion "at the expense of the jury's function of finding the facts essential to a lawful imposition of penalty," and judicial (or parole board) factfinding does not infringe on a defendant's "legal right to a lesser sentence." *Blakely* [*supra* at 309].

Here, the trial court did not employ an enhancement provision based on a judicially determined fact, but instead, imposed its sentence pursuant to the discretion provided it under the sentencing code and the sentencing guidelines. The sentence was proper under the code and the guidelines, and the guidelines, themselves, are constitutional under *Blakely*. [*Smith, supra* at 1178-1179.]

## C. MICHIGAN'S SENTENCING SCHEME

This Court likewise has noted that the Sixth Amendment bars the use of judicially ascertained facts to increase a defendant's maximum sentence beyond that authorized by the jury's verdict. *Claypool, supra* at 730 n 14. However, a defendant does not have a right to anything less than the maximum sentence authorized by the jury's verdict, and, therefore, judges may make certain factual findings to select a specific minimum sentence from within a defined range. *Blakely, supra* at 308-309. In *Claypool*, *supra* at 730 n 14, this Court noted that *Blakely* does not affect Michigan's sentencing scheme. We explained:

*Blakely* concerned the Washington state determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Thus, the trial judge in that case was required to set a fixed sentence imposed within a range determined by guidelines and was able to increase the maximum sentence on the basis of judicial fact-finding. This offended the Sixth Amendment, the United States Supreme Court concluded, because the facts that

19

led to the sentence were not found by the jury. *Blakely*, *supra* at [305].

> Michigan, in contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. MCL 769.8. The minimum is based on guidelines ranges as discussed in the present case and in [*People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003)]. The trial judge sets the minimum but can never exceed the maximum (other than in the case of a habitual offender, which we need not consider because *Blakely* specifically excludes the fact of a previous conviction from its holding). Accordingly, the Michigan system is unaffected by the holding in *Blakely* that was designed to protect the defendant from a higher sentence based on facts not found by the jury in violation of the Sixth Amendment. [*Id.*]

Having concluded that *Blakely* applies only to bar the use of judicially ascertained facts to impose a sentence beyond that permitted by the jury's verdict, we must next determine what constitutes the "statutory maximum" under Michigan's sentencing scheme. MCL 769.8(1) states:

> When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.

In other words, in all but a few cases,[12] a sentence imposed in Michigan is an indeterminate sentence. The maximum sentence is not determined by the trial

---

[12] Crimes requiring a determinate sentence include carrying or possessing a firearm when committing or attempting to commit a felony, MCL 750.227b (imposing a flat two-year sentence); and first-degree murder, MCL 750.316 (imposing a mandatory life sentence without the possibility of parole).

court, but rather is set by law.[13] Michigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely,* create a range within which the trial court must set the minimum sentence. However, a Michigan trial court may not impose a sentence greater than the statutory maximum. While a trial court may depart from the minimum guideline range on the basis of "substantial and compelling reason[s]," MCL 769.34(3); *Babcock*, *supra* at 256-258, such departures, with one exception, are limited by statute to a minimum sentence that does not exceed "2/3 of the statutory maximum sentence."[14] MCL 769.34(2)(b).

---

[13] We note that the statutory maximum sentence is subject to enhancement based on Michigan's habitual offender act, MCL 769.12. Under the habitual offender statute, a trial court may impose a maximum sentence beyond the statutory maximum upon a determination that the defendant "has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . ." MCL 769.12(1). Thus, the statutory maximum sentence of a defendant who is convicted of being an habitual offender is as provided in the habitual offender statute, rather than the statute he or she was convicted of offending. *Apprendi* and *Blakely* specifically allow for an increase in a defendant's maximum sentence on the basis of "the fact of a prior conviction . . . ." *Apprendi, supra* at 490.

Further, we note that our holding in this case does not affect the ability of the trial court to impose a jail sentence and/or probation in lieu of a prison sentence where permitted by law. See, e.g., MCL 769.34(4)(c). Generally, the maximum term of probation is two years for a defendant convicted of a misdemeanor and five years for a defendant convicted of a felony. MCL 771.2(1). For certain enumerated felonies, the maximum term of probation is "any term of years, but not less than 5 years." MCL 771.2a(2).

[14] We recently held that MCL 769.34 does not apply when a defendant is convicted of a crime punishable with imprisonment for "life or any term of years" because the minimum will never exceed 2/3 of the statutory maximum sentence of life. *People v Powe*, 469 Mich 1032 (2004). Because a jury's verdict in such cases authorizes a life sentence, the imposition of *any* sentence is within the range authorized by that verdict. Accordingly, a trial court may utilize judicially

(continued…)

21

Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the "maximum-minimum" sentence will always fall within the range authorized by the jury's verdict.[15]

Defendant asserts that the "maximum-minimum" under the guidelines constitutes the "statutory maximum" for *Blakely* purposes because a trial court is required to depart on the basis of a finding of aggravating factors that, as a practical matter, will subject the defendant to an increase in the actual time the defendant will be required to serve in prison. However, defendant's interpretation is inconsistent with the nature of the protection afforded by the Sixth Amendment. At common law, a jury's verdict entitled a defendant to a determinate sentence. *Apprendi, supra*. During the 19th century, American courts began moving away from such sentencing by according trial courts the discretion to determine a defendant's sentence. However, this new discretion was limited by fixed statutory or constitutional limits. *Id*. In other words, while a trial court could impose a sentence *less than* the maximum authorized by the jury's verdict, the court could not impose a sentence greater than that allowed by the statute that the defendant

---

(…continued)
ascertained facts to sentence a defendant to a term up to life imprisonment when life is the maximum sentence. *Harris, supra; McNally, supra.*

[15] In *Claypool, supra* at 739, then Chief Justice Corrigan, concurring in part and dissenting in part, noted that "[g]iven the response to *Blakely*, it appears likely that the issue of mandatory minimum sentences will need to be settled." We settle this issue today by holding that departures from the minimum guidelines are not implicated by *Blakely*.

had been convicted of violating. In short, the Sixth Amendment ensures that a defendant will not be incarcerated for a term longer than that authorized by the jury upon a finding of guilt beyond a reasonable doubt. However, the Sixth Amendment does not entitle a defendant to a sentence *below* that statutory maximum. *Apprendi, supra* at 498 (Scalia, J., concurring). Rather, under the Sixth Amendment, the jury effectively sets the outer limits of a sentence and the trial court is then permitted "to exercise discretion-- taking into consideration various factors relating both to offense and offender-- in imposing a judgment within the range prescribed by statute." *Id.* at 481 (emphasis omitted); *McMillan, supra; Harris, supra.*

When defendant, a third-offense habitual offender, committed third-degree criminal sexual conduct, he did so knowing that he was risking 30 years in prison. When defendant was, in fact, sentenced to a maximum of 30 years in prison, he received all the protections he was entitled to under the Sixth Amendment. Therefore, the trial court's exercise of discretion in imposing a sentence greater than the "maximum-minimum," but within the range authorized by the verdict, fully complies with the Sixth Amendment.

Finally, but not insignificantly, there is no guarantee that an incarcerated person will be released from prison after the person has completed his or her minimum sentence. Ultimately, the parole board retains the discretion to keep a person incarcerated up to the maximum sentence authorized by the jury's verdict. Accordingly, because a Michigan defendant is always subject to serving the

maximum sentence provided for in the statute that he or she was found to have violated, that maximum sentence constitutes the "statutory maximum" as set forth in *Blakely*. Therefore, we reaffirm our statement from *Claypool*, *supra* at 730 n 14, that "the Michigan system is unaffected by the holding in *Blakely* that was designed to protect the defendant from a higher sentence based on facts not found by the jury in violation of the Sixth Amendment."

IV. CONCLUSION

We conclude that, under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi, supra* at 490. The statutory maximum constitutes "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant." *Blakely, supra* at 303 (emphasis omitted). Under Michigan's sentencing scheme, the maximum sentence that a trial court may impose on the basis of the jury's verdict is the statutory maximum. MCL 769.8(1). In other words, every defendant, as here, who commits third-degree criminal sexual conduct knows that he or she is risking 15 years in prison, assuming that he or she is not an habitual offender. MCL 750.520d(2). As long as the defendant receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict. Accordingly, we reaffirm our statement in *Claypool*, and affirm defendant's sentence.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

24

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                               No. 127489

JOSEPH ERIC DROHAN,

    Defendant-Appellant.

_____

WEAVER, J. *(concurring)*.

I concur in the result of the majority opinion. As this Court recognized in *People v Claypool,* 470 Mich 715; 684 NW2d 278 (2004), the United States Supreme Court's decision in *Blakely v Washington,* 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), which considered whether facts that increase the penalty for a crime beyond the prescribed statutory maximum sentence must be submitted to the jury, does not affect Michigan's scoring system, which establishes the recommended *minimum* sentence.

                                       Elizabeth A. Weaver

    Cavanagh, J., concurred in the result only.

                                       Michael F. Cavanagh

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                          No.  127489

JOSEPH ERIC DROHAN,

      Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

My opinion in this case parallels my dissenting opinion in *People v McCuller*, 475 Mich ___; ___ NW2d ___ (2006) (Docket No. 128161, decided June 13, 2006). Because *McCuller* offers a better opportunity to explore the ramifications of *Blakely v Washington*[1] and associated United States Supreme Court cases, my opinion in that case more fully explores the pertinent issues.

I concur in the majority's decision that Joseph Drohan's sentence does not offend the Sixth Amendment. US Const, Am VI. I agree that, in cases like his, the "statutory maximum" for *Blakely* purposes is the maximum sentence allowed by law and provided by statute. I dissent, however, from the majority's reliance on *People v Claypool*[2] as having precedential value here. I dissent also from the

_____

[1] 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).

[2] 470 Mich 715; 684 NW2d 278 (2004).

majority's implication that the "statutory maximum" sentence under Michigan's sentencing guidelines will always be the maximum sentence allowed by statute. As I explained in *McCuller*, when intermediate sanction cells are involved, the intermediate sanction is the "statutory maximum" for *Blakely* purposes. Because of the gravity and pervasiveness of the intermediate sanction cell problem, I would find the sentencing guidelines no longer valid.

DEFENDANT'S SENTENCING

A jury convicted defendant of third-degree criminal sexual conduct[3] (CSC III) and fourth-degree criminal sexual conduct[4] (CSC IV). Defendant pleaded guilty of being a third-offense habitual offender. MCL 769.11. The focus of his appeal is his sentence for the CSC III offense. CSC III is categorized as a crime against a person and is listed as a class B offense. MCL 777.16y.

When it sentenced defendant, the court calculated his prior record variable (PRV) level at 20 points. With respect to the offense variables (OVs), it scored ten points for OV 4,[5] 15 points for OV 10,[6] five points for OV 12,[7] and 25 points

---

[3] MCL 750.520d(1)(b).

[4] MCL 750.520e(1)(b).

[5] MCL 777.34, psychological injury to a victim.

[6] MCL 777.40, exploitation of a vulnerable victim.

[7] MCL 777.42, contemporaneous felonious criminal acts.

for OV 13.[8]  Defendant objected at sentencing to the scores attributed to OVs 4 and 10, but the court rejected his arguments.  His OV level was set at 55 points.  In the class B sentencing grid, a PRV level of 20 points and an OV level of 55 points placed defendant in cell C-V.  MCL 777.63.  That cell provides a minimum sentence range of 51 to 85 months.  Because defendant was a third-offense habitual offender, the top number was increased by 50 percent to 127 months.  MCL 777.21(3)(b).  Accordingly, the trial court sentenced defendant to 127 months to 30 years of imprisonment.  It also sentenced him to one to four years of concurrent imprisonment for the CSC IV conviction.

Defendant's sentences were rendered before the United States Supreme Court issued its decision in *Blakely*.  But after that date, defendant raised the *Blakely* issue in a supplemental brief on appeal.  The Court of Appeals did not directly analyze the issue, stating merely that it disagreed with defendant's contentions.  It relied on dicta contained in our *Claypool* opinion, treating it as binding precedent.  But the Court of Appeals did request this Court to indicate whether it should be bound by the *Claypool* dicta.  *People v Drohan*, 264 Mich App 77, 89 n 4; 689 NW2d 750 (2004).  We granted oral argument on the matter, limited to what effect, if any, the *Blakely* opinion has on Michigan's statutory sentencing guidelines.  472 Mich 881 (2005).

---

[8] MCL 777.43, continuing pattern of criminal behavior.  Defendant never objected to the scoring of OV 13.  This constitutes an admission that it was properly scored.

In his appeal in this Court, defendant claims that the trial court incorrectly scored OVs 4, 10, and 12. But it is apparent that, however these OVs were scored, defendant's sentence would not have fallen within an intermediate sanction cell. With his PRV level of 20 points and an OV level of 25 points,[9] defendant would have fallen into cell C-III, which, for a third-offense habitual offender, provides a range of 36 to 90 months. MCL 777.21(3)(b) and 777.63. A sentencing guidelines cell is an intermediate sanction cell only when the upper limit of the sentencing range is under 18 months. MCL 769.34(4)(a) .[10]

Even if defendant's PRV level were zero, his sentence would not fall within an intermediate sanction cell. Instead, it would fall into cell C-I. For a third-offense habitual offender, cell C-I sets a minimum sentence range of 24 to 60

---

[9] Even if OVs 4, 10, and 12 had been scored at zero, defendant would have had an OV level of 25 because he conceded the scoring of OV 13.

[10] MCL 769.34(4)(a) provides:

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

months.  Again, this exceeds the 18-month limit for an intermediate sanction cell. MCL 769.34(4)(a).

The significance of the fact that defendant's sentence could not fall within an intermediate sanction cell is that the problem that arose in *McCuller* cannot occur here.  The reason is that the guidelines dictate defendant's minimum sentence only.  The judicial findings of fact used to score the challenged OVs did not change defendant's maximum sentence.  As a consequence, no *Blakely* issue arises.

THE UNITED STATES SUPREME COURT'S PRECEDENT REGARDING THE "STATUTORY MAXIMUM"[11]

In *McMillan v Pennsylvania*,[12] the Supreme Court addressed the constitutionality of Pennsylvania's mandatory minimum sentencing act, 42 Pa Cons Stat 9712 (1982).  It found that the act did not change the prosecution's burden of proving guilt beyond a reasonable doubt.  *McMillan v Pennsylvania*, 477 US 79, 86-88; 106 S Ct 2411; 91 L Ed 2d 67 (1986).  It was careful to point out, however, that there are constitutional limits on how far a state may go in defining away the facts necessary to prove a criminal offense.  Specifically, the Court relied on the fact that the Pennsylvania act did not increase the maximum penalty faced by a defendant.  *Id*. at 87-88.

---

[11] For a more complete discussion of the case history, please see my dissent in *McCuller*, 475 Mich ___.

[12] 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

The Supreme Court expanded on this point in five subsequent cases: *Jones v United States*,[13] *Apprendi v New Jersey*,[14] *Ring v Arizona*,[15] *Blakely*, and *United States v Booker*.[16] I refer to these cases as "the *Blakely* cases." The *Blakely* cases focused primarily on the "statutory maximum." *Blakely* and *Booker* made clear that this phrase did not refer to the absolute maximum sentence provided by statute. Instead, the Supreme Court defined the "statutory maximum" as the maximum sentence that can be imposed without any judicial fact-finding:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority. [*Blakely v Washington*, 542 US 296, 303-304; 124 S Ct 2531; 159 L Ed 2d 403 (2004) (emphasis in original; citations omitted).]

The *Blakely* cases reiterated a central holding:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

---

[13] 526 US 227; 119 S Ct 1215; 143 L Ed 2d 311 (1999).

[14] 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000).

[15] 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002).

[16] 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005).

[*United States v Booker*, 543 US 220, 244; 125 S Ct 738; 160 L Ed 2d 621 (2005).]

THE DIFFERENCE BETWEEN INTERMEDIATE SANCTIONS CELLS AND NONINTERMEDIATE SANCTION CELLS

When a defendant is entitled to a sentence falling within an intermediate sanction cell, Michigan's sentencing guidelines establish the maximum sentence that the defendant may face.  MCL 769.34(4)(a).  That maximum is either the upper limit of the recommended minimum sentence range or 12 months in jail, whichever period is shorter.  Under the guidelines, a trial court is required to impose this maximum sentence unless it articulates substantial and compelling reasons to depart upward.  At that point, the sentencing process is no longer focused on the individual's minimum sentence.  The court's attention centers on the "statutory maximum" discussed in the *Blakely* cases.  This is because the intermediate sanction is the maximum sentence supported by the jury verdict and defendant's criminal history alone.  *Blakely* holds that any judicial fact-finding that moves a defendant above this "statutory maximum" violates the Sixth Amendment.  *Booker*, 543 US 244; *Blakely*, 542 US 303-304.

In cases involving nonintermediate sanction cells, such as Joseph Drohan's case, the sentencing guidelines set the minimum sentence.  If the judge engages in judicial fact-finding to increase the minimum sentence, the defendant's maximum sentence will not be increased.  Instead, the "statutory maximum" for *Blakely* purposes is the maximum sentence set by the criminal statute.  The defendant's criminal history, admissions, and the jury's verdict alone allow the court to

7

sentence a defendant to the maximum sentence allowed by law, regardless of any subsequent judicial fact-finding. And the defendant's Sixth Amendment rights are not implicated because all facts needed to support the maximum sentence were admitted by the defendant or proven to a jury beyond a reasonable doubt.

In cases like Drohan's, judicial fact-finding moves the minimum sentence within the preexisting range rather than increasing the potential maximum sentence. As the Supreme Court noted, this does not violate constitutional rights because "it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding[s.]" *McMillan*, 477 US 88.

Drohan's case serves to demonstrate this point of law. Drohan's criminal history, scored through the PRVs, did not place his sentence in an intermediate sanction cell. Hence, his "statutory maximum" was never an intermediate sanction. Instead, his maximum sentence was the maximum penalty allowed by law, 30 years. The judicial fact-finding necessary to score OVs 4, 10, and 12 did not and could not change his maximum sentence. Therefore, defendant always knew his potential maximum sentence; it was the maximum penalty prescribed by law. Just as in *McMillan*, adjustments to the minimum sentence create no constitutional problems. *Id*. at 86-88.

Because Drohan's sentence does not raise a Sixth Amendment issue, it is constitutionally unobjectionable. Therefore, I concur in the decision to affirm it.

8

THE INTERMEDIATE SANCTION CELL PROBLEM AND SOLUTION

As shown above, and as I discussed in *McCuller*, the existence of intermediate sanction cells in Michigan's sentencing guidelines creates a *Blakely* problem. The reason is that judicial fact-finding used to score the OVs or to depart from the intermediate sanction cells changes a defendant's "statutory maximum" sentence. The change in the "statutory maximum" makes the sentence constitutionally infirm. Then, the question must be addressed whether the offending portions of the sentencing guidelines can be severed from the nonoffending portions. Such severance might be possible if the Legislature had intended the sentencing guidelines to function without intermediate sanction cells. But that was not its intention

I must reiterate my belief, as set forth in *McCuller,* that the offending sections cannot be severed. Nearly every class of felony involves intermediate sanction cells. In fact, only class A and M2 felonies do not. See MCL 777.61 to 777.69. Nearly every single felony could present a *Blakely* problem if the defendant has the correct number of PRV points. The comprehensiveness of the problem creates extreme entanglement.

At the start of any jury trial, the participants will be uncertain which sentencing method will be appropriate if the defendant is convicted. They will not know whether judicial fact-finding will be required or permitted. And the prosecution will be uncertain of the entirety of the facts it must prove to the jury.

9

Moreover, the offending sections of the sentencing guidelines will be difficult to spot. For one defendant convicted of a crime, it would be appropriate to score the OVs. For another convicted of the same crime, it would be impermissible to score the OVs because that defendant's PRV level places him or her in an intermediate sanction cell. Such entanglement shows that severance is simply not feasible. *Blank v Dep't of Corrections*, 462 Mich 103, 123; 611 NW2d 530 (2000) (opinion by Kelly, J.).

Also, it is unlikely that the Legislature would have enacted a noncomprehensive version of the guidelines. The Legislature intended the guidelines to be comprehensive. *People v Garza*, 469 Mich 431, 434-435; 670 NW2d 662 (2003). Its specific goals were to eliminate sentencing disparity and ensure that certain crimes not warranting prison time result in jail sentences. *Id*. at 435. Severing the intermediate sanction cells from the sentencing guidelines would work counter to both goals. This demonstrates that severance is not appropriate. *People v McMurchy*, 249 Mich 147, 157-159; 228 NW 723 (1930). Given that the offending sections cannot be severed, the guidelines as a whole must be found no longer valid.

However, alternative solutions should be explored. For example, we could replace all judicial fact-finding with jury determinations. The prosecution could include in its charges the specific facts needed to score relevant OVs. Then, in a bifurcated hearing, the prosecution could present evidence regarding each of them. The jury could deliberate and make specific findings. It could indicate which facts

10

the prosecution had proved beyond a reasonable doubt. Because it would be the jury making the determinations, there would be no constitutional impediment to an OV score moving a defendant's sentence out of an intermediate sanction cell. See *McCuller*, 475 Mich ___.

This solution would ensure that the Legislature's intent in enacting the guidelines would be fulfilled. At the same time, it would allow defendants full Sixth Amendment protection by putting the prosecution to its proofs. Such a system would be compatible with the *Blakely* cases.

CLAYPOOL HAS NO PRECEDENTIAL VALUE

The Court of Appeals specifically asked us to address whether *Claypool's* discussion of *Blakely* carries any precedential weight. In its decision, the majority implies that it does. I strongly disagree. The discussion of *Blakely* in *Claypool* was mere dicta.

Black's Law Dictionary (7th ed) defines "obiter dictum" as: "A judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . ." The reference to *Blakely* in *Claypool* was completely unnecessary to that decision. *Blakely* had nothing to do with the issue presented in *Claypool,* which the Court framed as

> whether it is permissible for Michigan trial judges, sentencing under the legislative sentencing guidelines pursuant to MCL 769.34, to consider, for the purpose of a downward departure from the guidelines range, police conduct that is described as sentencing

11

manipulation, sentencing entrapment, or sentencing escalation. [*People v Claypool*, 470 Mich 715, 718; 684 NW2d 278 (2004).]

In fact, the majority opinion in *Claypool* notes the irrelevance of *Blakely* to the discussion: "The Chief Justice argues that the United States Supreme Court's recent decision in *Blakely v Washington*, 542 US [296]; 124 S Ct 2531; 159 L Ed 2d 403 (2004), affects this case. We disagree." *Id*. at 730 n 14.

As I noted at the time, *Blakely* was neither raised nor addressed by the parties. It was not germane to the discussion. *Id*. at 748 (Kelly, J. concurring in part and dissenting in part). Given this irrelevance, the discussion clearly falls under the dictionary definition of "dicta." Such dicta lack the force of an adjudication and are not binding under the principles of stare decisis. *People v Borchard-Ruhland*, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999). It is erroneous for the majority to indicate that the *Blakely* discussion in *Claypool* has any precedential weight.

## CONCLUSION

I concur in the majority's decision that defendant's sentence does not offend the Sixth Amendment. But I believe that the Michigan sentencing guidelines do contain a constitutional flaw, which emerges whenever OV scores determined by judicial fact-finding remove a defendant from an intermediate sanction cell. Hence, for the reasons stated in my dissenting opinion in

12

*McCuller*,[17] I would find Michigan's sentencing guidelines no longer constitutionally sound. Also, the majority's attempt to treat *Claypool's* discussion of *Blakely* as precedentially binding is incorrect. *Claypool's* analysis of *Blakely* was simply dicta.

I would affirm defendant's sentence.

Marilyn Kelly

---

[17] 475 Mich ___.